1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10    SHERMAN JONES, et al.,

11              Plaintiffs,                    No. 2:10-cv-2174 KJM KJN P

12        vs.

13    C. CANNEDY, et al.,

14              Defendants.                    FINDINGS AND RECOMMENDATIONS

15    _____/

16              Plaintiff, a state prisoner at California State Prison-Sacramento ("CSP-SAC"),[1]

17    now proceeding with retained counsel, filed this civil rights action pursuant to 42 U.S.C. § 1983.

18    This action proceeds against eight defendants:  CSP-SAC Warden Virga, Associate Warden

19    Lizarraga, Captain Mini, Lieutenant Cannedy, Sergeant Hansen, Sergeant Baker, Appeals

20    Examiner Holstrom, and Inmate Appeals Branch Chief Foston.  These defendants, through the

21    California Attorney General, filed a motion to dismiss plaintiff's First Amended Complaint.[2]

22    _____

23        [1]  The court notes that, as recently as February 2012, plaintiff's correspondence indicated
      that he remained incarcerated at CSP-SAC.  However, review of the "Inmate Locator" website
      operated by the California Department of Corrections and Rehabilitation ("CDCR") indicates
24    that plaintiff is no longer a state prisoner.  Because plaintiff now proceeds with counsel, the court
      need not ascertain whether plaintiff remains incarcerated or his current address.
25

26        [2]  The Ninth Circuit recently held that pro se prisoner plaintiffs are to be accorded
      contemporaneous notice of the requirements for opposing a motion to dismiss, if the motion

                                              1

1  Plaintiff filed an opposition, and defendants filed a reply.  For the reasons that follow, the

2  undersigned recommends that this action proceed on plaintiff's Equal Protection and Eighth

3  Amendment claims against defendants Virga, Lizarraga, and Mini.

4   I.  Background

5              This action proceeds on plaintiff's "Claim I," set forth in his First Amended

6  Complaint ("FAC"), filed in pro se on March 7, 2011.  (Dkt. No. 22.)  As found by this court on

7  August 26, 2011 (Dkt. No. 35), this broad contention appeared to allege potentially cognizable

8  Fourteenth Amendment due process and equal protection claims, and Eighth Amendment claims,

9  based on allegations that CSP-SAC improperly included "Non-Affiliated Black" inmates (and

10  hence plaintiff) in a prolonged "Modified Program" (lockdown), following a January 19, 2010

11  riot between "Black disruptive groups" and "Southern Hispanics."  The court found that plaintiff

12  was precluded from pursuing his "Claim II," premised on the allegedly "staged release" of

13  inmates with the intent to create interracial fights to justify continuation of the Modified

14  Program, due to plaintiff's failure to timely exhaust his administrative remedies.  (Dkt. No. 35 at

15  3-4.)  The court also denied plaintiff's efforts to pursue this case as a class action.  (Id. at 2.)

16              In their instant motion to dismiss, defendants have summarized the pertinent

17  allegations of the SAC; plaintiff has not objected to this summary, which the court finds accurate

18  and therefore recounts in full (Dkt. No. 44-1 at 9-11):

19              On January 19, 2010, a riot broke out between "Black disruptive
             groups" and "Southern Hispanics" in the "B Facility" of California
20              State Prison, Sacramento ("CSP-SAC").  (ECF [Dkt.] No. 22 at
             6:21-27.)  In response, staff immediately placed all inmates on
21              modified program.  (ECF No. 22 at 7:1-2.)  On January 21, 2010,
             CSP-SAC staff returned inmates classified as Whites, Asians, and
22              "Others" to normal programming, while all African American and

23  ─────────────────────────
   alleges the failure to exhaust administrative remedies.  See Woods v. Carey, __ F.3d __, 2012 WL
24  2626912 (9th Cir., July 06, 2012 ); Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003).
   Defendants do not allege a failure to exhaust, but nevertheless provided the required
25  contemporaneous notice to plaintiff while he was proceeding in pro se.  (See Dkt. No. 44.)
   Moreover, plaintiff's current representation by counsel also renders this requirement
26  inapplicable.

2

all Hispanic inmates remained on modified program. (ECF No. 22 at 7:2-7.) Plaintiff, an "unaffiliated" African American inmate, was among those inmates who remained on modified program. (Id.)

On January 30, 2010, Plaintiff filed a group inmate grievance requesting that he and all other "unaffiliated" African American inmates be taken off of modified program and returned to normal programming along with the Whites, Asians, and "Others." (ECF No. 22 at 7:13-20.) Defendant Sergeant Hansen thereafter interviewed Plaintiff as part of the first level review of the inmate grievance. (ECF No. 22 at 7:22-23.) Sergeant Hansen used language like "race riot" and "security threat," and was aware of the "Mexican Code" to attack any African American inmate. (ECF No. 22 at 7:23-27.) Sergeant Hansen, however, failed to provide a reasonable justification as to why all African American inmates needed to be on modified program since the Hispanic inmates could not present a threat to them while they were all on modified program. (ECF No. 22 at 7:22-8:18.) Sergeant Hansen also agreed that sixty days was "long enough" for staff to investigate and return the "unaffiliated" African American inmates to normal programming. (ECF No. 22 at 8:19-23.)

Defendant Warden Virga signed the second level review to Plaintiff's inmate grievance. (ECF No. 22 at 9:3-13, Ex. A.) Warden Virga denied the inmate grievance and failed to explain why Whites, Asians, and "Others" were allowed a normal program while African Americans and Hispanics were on a modified program. (ECF No. 22 at 9:3-13.)

Plaintiff's inmate grievance then proceeded to the third level of review, where it was reviewed by Appeal Examiner Holstrom and Inmate Appeals Branch Chief Foston. (ECF No.22 at 9:23-28; 11:6-12:1.) At this point, CSP-SAC staff, including Sergeant Hansen, had verbally stated that "unaffiliated" African American inmates were being kept on modified program because of concern that Hispanic inmates would attack any African American. (ECF No. 22 at 9:23-28.) But, all Hispanics were on modified program and did not have any access to the general population yard. (ECF No. 22 at 9:28-10:1.) The third level response stated that, according to Lieutenant Cannedy, a controlled release of "unaffiliated" inmates would begin June 14, 2010, but was also contradictory because it acknowledged that racial violence would occur if African American inmates were placed on the same yard as Hispanics. (ECF No. 22 at 11:6-12:12.)

A week before June 14, 2010, Plaintiff attempted to clarify with Defendant Sergeant Baker that only "unaffiliated" African American inmates, and not Hispanic inmates, would be returned to normal programming because of concern over the Hispanics' active "code" to attack any African American inmate. (ECF No.

1    22 at 12:22-27.)  Unidentified correctional staff staged "race
     incidents," knowing such scenes would result in the continued
2    modified program for all African American inmates.  (ECF No. 22
     at 12:27-13:14.)
3
     Facility Captain Mini and Associate Warden Lizarraga signed all B
4    yard memoranda, carrying out a policy of racial discrimination, and
     were aware of and condoned the modified program that punished
5    the African American "unaffiliated" inmates.  (ECF No. 22 at
     14:12-28.)  During the course of the modified program,
6    "unaffiliated" African American inmates not involved in the
     January 19, 2010 race riot were subjected to modified program
7    from January 19, 2010, through April 6, 2010.  (ECF No. 22 at
     10:2-24.)  That modified program included:  continuous cell
8    confinement twenty-four hours per day; no outside exercise; no
     religious services; access to law library was limited to the paging
9    system; no inmate association or visits; no telephone calls; and no
     or limited food canteen.  (ECF No. 22 at 10:2-24.)  Beginning on
10   April 7, 2010, African American inmates were afforded outdoor
     exercise in the small concrete yards for two hours each week.
11   (ECF No. 22 at 10:24-11:6.)

12   II.  Motion to Dismiss

13        Defendants move to dismiss each of plaintiff's legal claims pursuant to Federal

14   Rule of Civil Procedure 12(b)(6), for failure to state a cognizable claim.  Alternatively,

15   defendants contend generally that they are entitled to qualified immunity.[3]

16        A.  Legal Standards Pursuant to Federal Rule of Civil Procedure 12(b)(6)

17        Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to

18   dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

19   In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

20   ─────────────

21        [3]  Defendants broadly contend that they are entitled to qualified immunity based on the
     following general argument:

22        Plaintiff has not suffered a violation of his constitutional rights.
23        Prison officials were doing what they believed was reasonable and
     necessary to quell inmate violence and protect the safety of
24        inmates, staff, and the public.  Thus, even if the Complaint alleges
     sufficient facts to state a claim against these Defendants,
25        Defendants are entitled to qualified immunity.

26   (Dkt. No. 44-1 at 27) (citations omitted).

1  court must accept as true the allegations of the complaint in question, <u>Erickson v. Pardus</u>,

2  551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  <u>Jenkins</u>

3  <u>v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Meek v. County of Riverside</u>, 183 F.3d 962, 965 (9th

4  Cir. 1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain

5  more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements

6  of a cause of action."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007).  In other

7  words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

8  statements do not suffice."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a

9  claim upon which the court can grant relief must have facial plausibility.  <u>Twombly</u>, 550 U.S. at

10  570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

11  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

12  <u>Iqbal</u>, 129 S. Ct. at 1949.  Attachments to a complaint are considered to be part of the complaint

13  for purposes of a motion to dismiss for failure to state a claim.  <u>Hal Roach Studios v. Richard</u>

14  <u>Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

15        A motion to dismiss for failure to state a claim should not be granted unless it

16  appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which

17  would entitle him to relief.  <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  In general, pro

18  se pleadings are held to a less stringent standard than those drafted by lawyers.  <u>Haines v. Kerner</u>,

19  404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.

20  <u>Bretz v. Kelman</u>, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc); <u>Hebbe v. Pliler</u>, 627 F.3d

21  338, 341-42 (9th Cir. 2010).  However, the court's liberal interpretation of a pro se complaint

22  may not supply essential elements of the claim that were not pled.  <u>Ivey v. Bd. of Regents of</u>

23  <u>Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).  "[T]he court is obligated to draw only

24  reasonable factual inferences" in plaintiff's favor.  <u>Porter v. Ollison</u>, 620 F.3d 952, 958 (9th Cir.

25  2010) (citation omitted).  Nevertheless, "in a line of cases stretching back nearly 50 years, we

26  have held that in dismissing for failure to state a claim under Rule 12(b)(6), a district court

should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."[4] <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations and internal quotation marks omitted).

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." <u>Outdoor Media Group, Inc. v. City of Beaumont</u>, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). However, under the "incorporation by reference" doctrine, a court may also review documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted and modification in original). The incorporation by reference doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." <u>Id.</u>

B. <u>Legal Standards Supporting Qualified Immunity</u>

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009). The defendant bears the burden of establishing qualified immunity. <u>Crawford-El v. Britton</u>, 523 U.S. 574, 586-87 (1998). The Supreme Court, in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), outlined a two-step approach to qualified immunity. The first step requires the court to ask whether, "[t]aken in the light most favorable to the party asserting the injury, do

---

[4]  For these reasons, the court rejects defendants' request that the FAC be dismissed solely because it allegedly fails to conform with the requirements of Rule 8, Federal Rules of Civil Procedure.

1  the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier</u>, 533 U.S. at

2  201.  The second inquiry is whether the right was clearly established, in other words, "whether it

3  would be clear to a reasonable officer that his conduct was unlawful in the situation he

4  confronted." <u>Id.</u>  In <u>Pearson</u>, <u>supra</u>, 555 U.S. 223, the Supreme Court gave district courts

5  discretion to grant qualified immunity on the basis of the "clearly established" prong alone,

6  without deciding in the first instance whether any right had been violated.  <u>Id.</u> at 236; <u>accord</u>

7  <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080 (2011).

8        C.  <u>Dismissal of Defendants Holstrom, Foston, Cannedy, Hansen, and Baker</u>

9        Defendants Holstrom (Appeals Examiner), Foston (Inmate Appeals Branch

10  Chief), Lieutenant Cannedy, Sergeant Hansen, and Sergeant Baker seek dismissal on the ground

11  that plaintiff's allegations against them are limited to their participation in reviewing plaintiff's

12  relevant administrative grievance, conduct which is insulated from constitutional challenge.

13        Prisoners have no stand-alone due process rights related to the administrative

14  grievance process.  <u>See</u> <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir.1988); <u>see also</u> <u>Ramirez v.</u>

15  <u>Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling

16  inmates to a specific grievance process).  Thus, prison officials are not required under federal law

17  to process inmate grievances in a specific way or to respond to them in a favorable manner.

18  Because there is no right to any particular grievance process, plaintiff cannot state a cognizable

19  civil rights claim for a violation of his due process rights based on allegations that prison officials

20  ignored or failed to properly process grievances.  <u>See</u> <u>e.g.</u> <u>Wright v. Shannon</u>, 2010 WL 445203

21  at *5 (E.D. Cal. 2010) (plaintiff's allegations that prison officials denied or ignored his inmate

22  appeals failed to state a cognizable claim under the First Amendment); <u>Walker v. Vazquez</u>, 2009

23  WL 5088788, *6–7 (E.D. Cal. 2009) (plaintiff's allegations that prison officials failed to timely

24  process his inmate appeals failed to state a cognizable claim under the Fourteenth Amendment);

25  <u>Williams v. Cate</u>, 2009 WL 3789597, *6 (E.D. Cal. 2009) ("Plaintiff has no protected liberty

26  interest in the vindication of his administrative claims.").

1      These authorities support defendants' contention that prison officials are not

2  required under federal law to process inmate grievances in any specific way, or to respond to

3  them in a favorable manner.  As a result, plaintiff cannot state a cognizable civil rights claim

4  based solely on allegations that prison officials ignored, inadequately responded to, or failed to

5  properly process, plaintiff's administrative grievances.

6      Review of the FAC and supporting documents supports dismissal of these

7  defendants on the ground asserted.  Plaintiff's sole allegations against these defendants are

8  limited to their respective roles in processing plaintiff's relevant administrative grievance,

9  specifically:  (1) that defendant Hansen "interviewed plaintiff" at the First Level Review,

10  pursuant to which Hansen allegedly sought to justify the challenged lockdown but "could provide

11  no reasonable explanation," only "excuses," thus providing a "one-sided interview," and

12  ultimately "denying" plaintiff's grievance (FAC at 7-8, ¶¶ 5, 8; id. at 14, ¶ 2); (2) that defendants

13  Holstrom and Foston "answered" and "denied" plaintiff's administrative grievance at the Third

14  Level (FAC at 11-12, ¶ 13; id. at 15, ¶¶ 6, 7); and (3) that defendant Cannedy provided

15  "confusing and contradictory" information to Holstrom and Foston in preparation of their Third

16  Level Response, "caus[ing] plaintiff(s) violation(s)" by "[h]er actions and failure to act" (FAC at

17  12, ¶ 14; id. at 13, ¶ 1).  As defendants contend, these narrow allegations against these defendants

18  are limited to the processing of plaintiff's administrative grievances.  Plaintiff makes no other

19  allegations against these defendants.  Therefore, defendants Hansen, Holstrom, Foston and

20  Cannedy should be dismissed from this action.

21      Similar reasons support the dismissal of defendant Baker.  Against Baker, plaintiff

22  contends only that plaintiff "attempted to clarify" his position with Baker on the yard, in "face to

23  face conversations."  (FAC at 12, ¶ 16; id. at 14, ¶ 3.)  Plaintiff's allegation that, despite these

24  conversations, defendant Baker proceeded to "carr[y] out illegal policy of racial discrimination

25  and disregard[ed] plaintiff's constitutional rights" (FAC at 14, ¶ 3), fails to state a cognizable

26  claim.  The Civil Rights Act requires that there be an actual connection or link between the

1   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  42

2   U.S.C. § 1983; see Monell v. Department of Social Services, 436 U.S. 658, 692 (1978)

3   ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v.

4   Goode, 423 U.S. 362 (1976).  While it is reasonable to assume that Sergeant Baker had some role

5   in the day-to-day management of the challenged lockdown, the FAC is devoid of allegations that

6   Baker had any decision-making role in the implementation or retention of the program.  Absent

7   the authority to make changes to the program, Baker cannot be said to have participated in, or

8   failed to perform, an affirmative act linking him to the alleged deprivation of plaintiff's

9   constitutional rights.  Therefore, Sergeant Baker should also be dismissed from this action.[5]

10          This court therefore recommends dismissal of defendants Hansen, Holstrom,

11   Foston, Cannedy, and Baker.

12          D.  Remaining Defendants

13          The court finds that the FAC states cognizable constitutional claims against each

14   of the remaining defendants, all prison administrators for whom the implementation and

15   continuation of the challenged Modified Program may reasonably be attributed.  The FAC

16   alleges, with supporting exhibits, that defendant Mini (B-Facility Captain) authored the January

17   19, 2010 and January 20, 2010 memoranda that created the lockdown and challenged program

18   modifications.  (See FAC at 45-47.)  These memoranda were "copied" only to defendant

19   Lizarraga (B Facility Watch Commander, also identified as "Assist Warden-B yard"), who

20   therefore appears to have had an integral role in implementing the subject lockdown and program

21   modifications.  (See id.)  A later memorandum, dated August 17, 2010, authored by "California

22   State Prison-Sacramento," and addressed to all "B Facility Staff and Inmates," may reasonably be

23   attributed to CSP-SAC Warden Virga.  (See id. at 62-3.)  Moreover, defendant Virga's October

24

25          [5]  The same reasoning -- lack of actual connection between defendants' challenged
    conduct and plaintiff's alleged constitutional deprivations -- further supports dismissal of
26   defendants Hansen, Holstrom, Foston and Cannedy.

1  2010 Second Level Response to plaintiff's administrative grievance (challenging in part a July

2  12, 2010 memorandum not attached to the FAC) demonstrates his full awareness of plaintiff's

3  challenges and concerns, as well as Warden Virga's responsibility and authority for maintaining

4  the lockdown and Modified Program.  As defendant Virga stated in response to plaintiff's appeal

5  (FAC at 68):

6              [T]he lockdown/Modified Program will be continuously reviewed
            and evaluated by the Warden and departmental administrators.
7

8              For these reasons, and the reasons that follow, this court finds that the FAC states

9  cognizable constitutional claims against CSP-SAC Warden Virga, Associate Warden Lizarraga,

10  and Captain Mini, all prison administrators apparently involved in the implementation,

11  maintenance and continuation of the challenged lockdown and Modified Program.  See Johnson

12  v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a

13  constitutional right if he does an act, participates in another's act or omits to perform an act he is

14  legally required to do that causes the alleged deprivation).

15         E.  Plaintiff's Equal Protection Claim

16              Plaintiff challenges CSP-SAC's extended Modified Program on equal protection

17  grounds, premised on the allegation that, when defendants returned to regular programming

18  White, Asian, and other inmates not involved in the January 2010 riot, defendants did not return

19  African American inmates who, like plaintiff, had not been involved in the riot and were not

20  affiliated with any gangs.  It is plaintiff's claim that he, like the other "non-affiliated black

21  inmates," were intentionally retained in the Modified Program solely on the basis of their race.

22              "Prisoners are protected under the Equal Protection Clause of the Fourteenth

23  Amendment from invidious discrimination based on race."  Wolff v. McDonnell, 418 U.S. 539,

24  556 (1974) (citation omitted).  Invidious discrimination such as racial segregation, which is

25  unconstitutional outside prisons, is also unconstitutional within prisons.  Johnson v. California,

26  543 U.S. 499, 505-06 (2005) (unwritten policy of placing new or transferred inmates with

1   cellmates of same race during initial evaluations held subject to strict scrutiny).  A prison

2   classification based on race is immediately suspect and is subject to the same strict scrutiny as a

3   racial classification outside prison.  Id. at 508-10.  Prison officials must demonstrate that the

4   race-based policy or action is narrowly tailored to serve a compelling state interest.  Id. at

5   510–11.  In Richardson v. Runnels, 594 F.3d 666, 671 (9th Cir. 2010), the Ninth Circuit applied

6   Johnson to hold that racial lockdowns in response to prison disturbances are subject to strict

7   scrutiny, under the following standard:  whether "reasonable men and women could not differ

8   regarding the necessity of a racial classification in response to prison disturbances and that the

9   challenged racial classification was the least restrictive alternative (i.e., that any race-based

10  policies are narrowly tailored to legitimate prison goals)."  Richardson, 594 F.3d at 671 (citing

11  Johnson, 543 U.S. at 505).

12        Defendants move to dismiss plaintiff's equal protection claim on the ground that

13  the Modified Program satisfied strict scrutiny standards because narrowly tailored and in

14  furtherance of compelling governmental interests.  Defendants contend that inclusion of all

15  African American inmates in the Modified Program served the compelling governmental

16  interests of restoring and maintaining prison order and inmate security, and preventing further

17  violence among or between Hispanic and African American inmates.  Defendants further contend

18  that the inclusion of all African American inmates in the program was narrowly tailored because,

19  even as allegedly conceded by plaintiff in the FAC, all African American inmates were at risk of

20  attack by Hispanic inmates.  (Dkt. No. 44-1 at 18.)  Defendants generally contend that, because

21  "prison officials were doing everything in their power to keep all staff and inmates -- including

22  plaintiff -- safe . . . plaintiff has failed to state an equal protection claim."  (Id.)

23        Defendants' reliance on the FAC is misplaced.  Defendants direct the court to

24  plaintiff's statement that "Sgt. Hansen was aware of the "Mexican Code" to "attack any Black"

25  (FAC at 7, ¶ 5), and that "Staff had verbally stated, Black non-affiliates were being kept on lock-

26  down due to Mexicans/Hispanics 'would attack' any Black" (FAC at 9, ¶ 9).  However,

immediately following these statements, the FAC alleges that the January riot "was 'not a race riot' [but] a select gang incident . . . all Hispanics were on lock-down [and] not allowed access to general population yard so they could be 'no threat' to Black non-affiliated inmates."  (FAC at 7-8, ¶ 5; <u>accord</u> <u>id.</u> at 9-10, ¶ 9 ("But all Hispanics were on lock-down with no access to general population yard")).)  In other words, it is plaintiff's position, as set forth in the FAC, that African American inmates released to the general population were not at risk of attack by Hispanic inmates because the latter were being retained in the Modified Program.  Thus, the purported "concessions" in the FAC do not support defendants' argument.

More importantly, defendants fail to direct the court to any evidence of record (e.g., as contained in the attachments to the FAC) in support of their general statements that, during the relevant period, the inclusion of all African American inmates in the Modified Program was narrowly tailored to serve a compelling governmental interest.  Recently, in another action by a non-affiliated African America inmate challenging the same CSP-SAC Modified Program, defendants therein moved to dismiss the plaintiff's equal protection claim based on exhibits attached to the complaint.  However, pursuant to the undersigned's review of those exhibits, the court concluded in pertinent part:

> The exhibits cited by defendants do not undermine plaintiff's Equal Protection claim.  Rather, the exhibits raise more questions regarding the lockdown.  These exhibits do not address why all African American inmates were placed on lockdown after an unidentified number of "Black disruptive group" inmates were involved in a racial riot with Southern Hispanics.  These exhibits do not address when the assessment and investigation, referred to in the January 19, 2010 memorandum, occurred.  These exhibits also do not address the results of the assessment and investigation.  The undersigned also notes that Hispanic inmates attacked the non-affiliated African American inmates released on categorized releases on June 14, 2010.  If the non-affiliated African American inmates were not the instigators, it is unclear why they remained on lockdown.  The memorandums also do not state whether the African American inmates involved in the July 21, 2010, and August 17, 2010 "riots" were non-affiliated or affiliated with disruptive groups. . . . While the exhibits indicate that prison officials made attempts to release African American inmates from the lockdown, it is unclear why prison officials did not release the

1                    African American inmates not involved in the January 19, 2010
incident sooner.

2

3   Armstead v. Virga, 2012 WL 2577562, *5-*6 (E.D. Cal., July 3, 2012).  Thus, although

4   defendants Virga and Mini made a stronger argument in Armstead than they have in the instant

5   case, in support of dismissing plaintiff's equal protection claim, this court was not persuaded.  As

6   in Armstead, the court is unable, at this juncture, to determine whether the racial classification

7   underlying the challenged Modified Program was the least restrictive means for achieving the

8   prison's security goals.  Nevertheless, it remains clear that plaintiff has stated a cognizable equal

9   protection claim against defendants Virga, Mini and Lizarraga.

10                 Defendants contend, alternatively, that they are entitled to qualified immunity on

11   plaintiff's equal protection claim, but do not assert that applicable law was not clearly established

12   during the relevant period.  More specifically, defendants do not argue that the Supreme Court's

13   2005 application of strict scrutiny to race-based prison decisions in Johnson was not clearly

14   established when defendants imposed the subject lockdown at CSP-SAC commencing January

15   19, 2010.  Similarly, defendants do not argue that the challenged Modified Program, which

16   appears to have continued through at least December 2010, was not governed by the Ninth

17   Circuit's January 26, 2010 decision in Richardson, which expressly applied the Johnson strict

18   scrutiny standard to race-based lockdowns.[6]  In sum, defendants have proffered no evidence or

19   case law in support of their argument that a prolonged lockdown of all CSP-SAC African

20   American inmates was necessary to maintain prison control and security.  In the absence of even

21   a colorable argument that a reasonable prison administrator could have believed that the

22

23        [6] Significantly, while the question of qualified immunity was not raised in Richardson, the Ninth Circuit rejected defendants' argument therein that the challenged lockdown, imposed prior to the Supreme Court's Johnson decision, were subject only to a reasonableness standard.

24   The Court of Appeals found, "that even under the weaker standard, which may govern the qualified immunity question, the assertion that it was sufficient for prison officials simply to

25   believe there to be a link between an individual incident perpetrated by one or two inmates, and the risk of violence from all the African-American prisoners in Facility D, with no evidentiary

26   basis whatever indicated for that belief, falls short."  Richardson, 594 F.3d at 671.

prolonged racial segregation of all African American inmates was both necessary and lawful in light of clearly established law, this court finds no merit to defendants' qualified immunity defense.

Accordingly, the court recommends denial of defendants' motion to dismiss plaintiff's equal protection claim, both on the merits and on qualified immunity grounds. These rulings should be without prejudice, subject to reconsideration pursuant to a summary judgment motion.

F. Plaintiff's Eighth Amendment Claim

In support of plaintiff's Eighth Amendment claim, the FAC alleges that, as a result of the challenged lockdown and Modified Program, plaintiff was deprived of "basic prison liberties," particularly access to "exercise/law library/general population yard/phones/full canteen/visits with family/religious services/and association with fellow inmates. . . ."[7]  (FAC at

_____

[7] Elsewhere in the FAC, plaintiff alleges in more detail that, as a result of the challenged conditions, he was unconstitutionally subjected to (FAC at 10-11, ¶ 10):

• continuous cell confinement -- 24 hours-a-day/7-days-a-week (except for being handcuffed behind backs and escorted to shower from 1/19/10 - 4/6/10);
• during 1/19/10 - 4/6/10 there was no outside exercise, simply confined to a cell with another inmate -- in a one-man cell;
• handcuffed behind back, while escorted to medical clinic and during doctor visits -- "conversations & examination" with doctor;
• cells were cold due to no heat or sunshine (or limited);
• no cleaning cell supplies were passed out or disinfectant (sic);
• no religious services;
• no physical access to law library or computers;
• no inmate association with fellow inmates for current events;
• no telephone calls;
• no visits (even behind glass);
• when food was allowed on canteen lit -- it was a limit on items to purchase with a limit of $45.00 to spend;
• when allowed to go to small enclosed yard on 4/7/10, the Black non-affiliates were placed on same yard [as] Black disruptive groups;
• the "small yard" was only for (2) two hours a week, meaning Black non-affiliates (Muslims and other uninvolved Black inmates) were in cells 166 hours per week . . . in a prison cell designed for one inmate -- but housing (2) two.

These modifications are formally set forth in the January 19, 2010, and January 20, 2010

16, ¶ 19.)  Construing plaintiff's Eighth Amendment claim as limited to the alleged deprivation of exercise, visitation, and law library access, defendants move to dismiss this claim.  (Dkt. No. 41-1 at 20-25.)  In opposition, plaintiff expressly challenged the dismissal only of his Eighth Amendment claim premised on the denial of adequate outdoor exercise, otherwise generally challenging the denial of "essential things" and "other limitations."  (Dkt. No. 50 at 6-9.)  Because plaintiff bears the burden to "make an objective showing that the deprivation was 'sufficiently serious' to form the basis of an Eighth Amendment violation," Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005), the court limits construction of plaintiff's Eighth Amendment claim to the alleged denial of adequate outdoor exercise, although other alleged deficiencies may later factor into the alleged impact of this claim, see e.g. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000 ("[t]he circumstances, nature, and duration of a deprivation of . . . necessities must be considered in determining whether a constitutional violation has occurred")).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.  What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S.1, 5 (1992) (citing Whitley, 475 U.S. at 320).  To prevail on an Eighth Amendment claim, the plaintiff must show, objectively, that he suffered a "sufficiently serious" deprivation. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). The plaintiff must also show that each defendant had, subjectively, a culpable state of mind in

memoranda authored by defendant Mini (see FAC at 45-47), as well as the August 17, 2010 memorandum to all B Facility Staff and Inmates (id. at 62-3).

1   causing or allowing plaintiff's deprivation to occur.  Farmer, 511 U.S. at 834.

2           Plaintiff alleges that he had no outside exercise from January 19, 2010, to April 6,

3   2010, a period of more than two-and-a-half months.  (FAC at 10, ¶ 10.)  Plaintiff further alleges

4   that, commencing April 7, 2010, plaintiff, along with the other African American inmates in the

5   Modified Program, was permitted only two hours of outside exercise per week.  (Id.)  This

6   limited schedule appears to have continued at least through December 2010.  (Id. at 11, ¶ 11.)

7           Defendants move to dismiss plaintiff's Eighth Amendment claim on the following

8   grounds:  (1) the duration of the alleged denial was insignificant when compared with other

9   denial-of-exercise cases finding an Eighth Amendment violation;  (2) plaintiff has not alleged

10  any adverse medical effects; and (3) the denial was justified by legitimate security concerns.

11  (Dkt. No. 41-1 at 21-2.)

12          While neither the FAC, nor plaintiff's opposition to defendants' motion to

13  dismiss, clearly identifies plaintiff's alleged injuries due to lack of exercise (other than what may

14  reasonably be inferred), the Ninth Circuit has clearly established that a deprivation of exercise

15  may constitute an Eighth Amendment violation.  Richardson v. Runnels, supra, 594 F.3d at 672;

16  Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).[8]  Moreover, an extended ban on outdoor

---

18      [8]  As the Ninth Circuit noted in Hearns:

19          "[E]xercise has been determined to be one of the basic human necessities
            protected by the Eighth Amendment," LeMaire v. Maass, 12 F.3d 1444, 1457 (9th
20          Cir. 1993), and a long-term deprivation of outdoor exercise for inmates is
            unconstitutional, see id. at 1458 ("[T]his circuit has determined the long-term
            denial of outside exercise is unconstitutional.") (emphasis in original).  See also
21          Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) ("There is substantial
            agreement among the cases in this area that some form of regular outdoor exercise
22          is extremely important to the psychological and physical well being of the
            inmates."); Toussaint v. Yockey, 722 F.2d 1490, 1493 (9th Cir. 1984) (holding
23          that the district court did not err in concluding that the denial of outdoor exercise
            to inmates assigned to administrative segregation for over one year raised
24          "substantial constitutional question").

25  Hearns v. Terhune, 413 F.3d at 1042.

26          More recently, as another magistrate judge recounted:

1   exercise, after resolution of the exigent circumstances that warranted an initial lockdown, may

2   support an inference that prison officials deliberately and knowingly refused to meet a plaintiff's

3   basic exercise needs.  See Johnson v. Lewis, 217 F.3d 726, 733-34 (9th Cir. 2000) (noting

4   heightened judicial deference accorded to prison officials during emergency circumstances, as set

5   forth in Whitley v. Albers, 475 U.S. 312 (1986), as compared to more routine challenges to

6   conditions of confinement, governed by the standard set forth in Wilson v. Seiter, 501 U.S. 294

7   (1991)).

8           For these reasons, each of the alleged grounds for dismissing plaintiff's Eighth

9   Amendment claim -- duration, impact, rationale -- are matters that must be addressed on a fully

10  developed record.  Richardson, 594 F.3d at 672 ("claims involving a prisoner's right to exercise

11  require a full consideration of context, and thus a fully developed record").  Therefore, the court

12  finds that the FAC alleges a cognizable Eighth Amendment denial-of-exercise claim that

13  _____

14          Inmates have a constitutional right to exercise and the denial of out-of-cell
        exercise for an extended period of time is sufficiently serious to state a claim
15      under the Eighth Amendment.  Thomas [v. Ponder], 611 F.3d [1144] at 1151-52
        [(9th Cir. 2010)].  No bright line exists in terms of how many hours of out-of-cell
16      exercise per week satisfy the Constitution.  Noble v. Adams, 646 F.3d 1138,
        1139-41 (9th Cir. 2011) (no outdoor exercise or other privileges for approximately
17      sixteen months); Hebbe v. Pliler, 627 F.3d 338, 343-44 (9th Cir. 2010) (inmate
        permitted out of his cell for only eight hours a week and impermissibly required to
18      choose between exercise and law library access during those hours); Thomas, 611
        F.3d at 1151–52 (no out-of-cell exercise for thirteen months); Pierce v. County of
19      Orange, 526 F.3d 1190, 1211–13 (9th Cir. 2008) (at least two days a week for at
        least two hours total per week sufficient exercise); LeMaire [v. Maass], 12 F.3d
20      [1444] at 1457–58 [(9th Cir. 1993)] (no out-of-cell exercise for most of a
        five-year period); Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1994) (in-cell
21      confinement for almost twenty-four hours a day and forty-five minutes of outside
        exercise per week for a six-week period); Spain v. Procunier, 600 F.2d 189, 199
22      (9th Cir. 1979) (fewer than five hours of exercise per week and no outdoor
        exercise for some inmates over a period of years).  Short-term, temporary
23      deprivations of exercise without medical effects are not sufficiently serious to
        support an Eighth Amendment claim, Thomas, 611 F.3d at 1155; Norwood
24      [v.Vance], 591 F.3d 1062, 1070 (9th Cir.2010); May v. Baldwin, 109 F.3d 557,
        565 (9th Cir.1997); Allen, 48 F.3d at 1088, but the deprivation of exercise for a
        period of six weeks can support a claim, Allen, 48 F.3d at 1088.

25

26  McKinney v. California Dept. of Corrections and Rehabilitation, 2012 WL 1909365, *8  (E.D.
    Cal. 2012).

1   survives defendants' motion to dismiss.

2          Additionally, because a prisoner's right to outdoor exercise is firmly established,

3   defendants' alternative qualified immunity defense fails pursuant to the instant motion.

4   Although the defense may prevail on a motion for summary judgment, see e.g. Noble v. Adams,

5   646 F.3d 1138, 1142-48 (9th Cir. 2011) (on appeal from summary judgment, granted defendant

6   prison officials' qualified immunity defense to plaintiff's Eighth Amendment denial-of-outdoor-

7   exercise claim attendant to a prison lockdown), and Norwood v. Vance, 591 F.3d 1062, 1069

8   (9th Cir. 2010) (same), the assessment of the constitutionality of denying outdoor exercise

9   pursuant to a given lockdown or modified program is too fact-dependent to resolve on a motion

10  to dismiss.  See e.g. Norwood, 591 F.3d at 1068 ("the qualified immunity inquiry is highly

11  context-sensitive, turning on whether it would be clear to a reasonable officer that denying

12  outdoor exercise was unlawful "in the situation he confronted") (quoting Saucier, 533 U.S. at

13  202).  In the absence of a fully developed record, qualified immunity does not apply where the

14  facts, construed in the light most favorable to the party asserting the injury, show a violation of a

15  clearly established constitutional right of which a reasonable official should be aware.  Anderson

16  v. Creighton, 483 U.S. 635, 640 (1987).

17         For these reasons, the court recommends denial of defendants' motion to dismiss

18  plaintiff's Eighth Amendment claim, both on the merits and on qualified immunity grounds.

19  These rulings should be without prejudice, subject to reconsideration pursuant to a summary

20  judgment motion.

21         G.  Plaintiff's Due Process Claims

22         Defendants move to dismiss plaintiff's due process claims as a matter of law.

23  Plaintiff has not opposed this portion of defendants' motion to dismiss, which the court construes

24  as a waiver of opposition to the dismissal of plaintiff's due process challenges.  Plaintiff's due

25  process claims should therefore be dismissed.

26  ////

H. <u>Conspiracy</u>

Pursuant to plaintiff's "Claim II," previously dismissed from this action, plaintiff alleged that defendants acted collectively pursuant to "combined actions and nonactions" (FAC at 29, ¶ 7), and "collective action(s)" (<u>id.</u> at 32, ¶ 51).  In response to defendants' motion to dismiss any inferred conspiracy claim, plaintiff asserts that "the decision to keep unaffiliated black inmates on lockdown and to follow a discriminatory policy could not be accomplished without defendants acting in concert."  (Dkt. No. 50 at 10 (emphasis deleted).)

A conspiracy claim brought under Section 1983 requires proof of "'an agreement or 'meeting of the minds' to violate constitutional rights," <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th Cir. 2001) (quoting <u>United Steel Workers of Amer. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41 (9th Cir. 1989),  <u>cert.</u> <u>denied</u>, 493 U.S. 809 (1989) (citation omitted)), as well as an "'actual deprivation of constitutional rights resulting from the alleged conspiracy,'" <u>Hart v. Parks</u>, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting <u>Woodrum v. Woodward County, Okla.</u>, 866 F.2d 1121, 1126 (9th Cir. 1989) (citations omitted)).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'"  <u>Franklin</u>, 312 F.3d at 441 (quoting <u>United Steel Workers</u>, 865 F.2d at 1541).  A complaint must "allege specific facts to support the existence of a conspiracy among the defendants."  <u>Buckey v. County of Los Angeles</u>, 968, 791, 794 (9th Cir. 1992); <u>Karim-Panahi v. Los Angeles Police Department</u>, 839 F.2d 621, 626 (9th Cir. 1988).  Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy.  <u>Sykes v. State of California</u>, 497 F.2d 197, 200 (9th Cir. 1974).

In addition to the prior dismissal of plaintiff's claim in which he made the putative conspiracy allegations, neither the express allegations of the actionable portion of the FAC, nor reasonable inferences thereon, support a claim that defendants conspired to deprive plaintiff of his constitutional rights.  Plaintiff's constitutional challenges to the nature and

1   duration of the Modified Program, while implicating defendants' decisions and resulting

2   conduct, do not sustain an allegation of defendants' concerted intent to deprive plaintiff of his

3   constitutional rights.

4            To the extent that plaintiff alleges a conspiracy claim, the claim should be

5   dismissed.

6   III.  <u>Conclusion</u>

7            For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

8            1.  Defendants' motion to dismiss (Dkt. No. 44), be granted in part and denied in

9   part.

10           2.  Defendants Holstrom, Foston, Cannedy, Hansen, and Baker, be dismissed from

11   this action.

12           3.  Plaintiff's due process and conspiracy claims should be dismissed.

13           4.  Defendants' qualified immunity defenses to plaintiff's Equal Protection and

14   Eighth Amendment claims should be denied.

15           5.  This action proceed on plaintiff's Equal Protection and Eighth Amendment

16   claims against defendants Virga, Lizarraga, and Mini.

17           These findings and recommendations are submitted to the United States District

18   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

19   after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

22   objections shall be filed and served within 14 days after service of the objections.  The parties are

23   ////

24   ////

25   ////

26   ////

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3   DATED:  August 7, 2012

4

5                                        KENDALL J. NEWMAN

6                                        UNITED STATES MAGISTRATE JUDGE

7   jone2174.mtd.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26